Kenneth R. WINTER, Appellant,

v.

Anthony J. PRINCIPI, Acting Secretary
of Veterans Affairs, Appellee.

No. 90–1521.

United States Court of Veterans Appeals.

Jan. 8, 1993.

Charles Haupt (non-attorney practitioner), was on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, and Thomas A. McLaughlin, were on the brief, for appellee.

Before KRAMER, FARLEY and IVERS, Associate Judges.

IVERS, Associate Judge:

Appellant, Kenneth R. Winter, seeks review of a July 8, 1991, decision by an expanded panel of the Board of Veterans' Appeals (BVA) which determined that the character of the veteran's discharge from military service precluded entitlement to Department of Veterans Affairs (formerly Veterans' Administration) (VA) benefits. The Court holds the BVA did not commit either factual or legal error which would warrant reversal. Accordingly, the Court affirms the decision of the BVA.

## I.  BACKGROUND

The veteran served two brief periods of active duty, first in the United States Marine Corps from June 1967 until October 1967, and then in the United States Army from March 1981 until September 1981. R. at 1–2. It is the veteran's second period of

military service which is the focus of this case.

The veteran enlisted in the Army, and was sent to the U.S. Army Infantry School at Fort Benning, Georgia, for Advanced Individual Training (AIT) as an infantryman. R. at 34. While at Fort Benning, the veteran was listed as absent without leave (AWOL) from June 22, 1981, until July 25, 1981, some 32 of the approximately 176 days he was in U.S. Army service. *Id.* This conduct rendered him "triable by court-martial under circumstances that could lead to a bad conduct or dishonorable discharge." R. at 25. Upon his return from AWOL status, the veteran voluntarily requested discharge "for the good of the service," pursuant to Chapter 10 of Army Regulations (AR) 635–200, claiming he was "not Army material." R. at 27–29. The veteran did receive an administrative discharge under Chapter 10, AR 635–200. R. at 25–37. As part of the discharge proceedings, the veteran received a "mental status evaluation," which established that the veteran had "the mental capacity to understand and participate in the proceedings and was mentally responsible." R. at 30. Because his administrative discharge was for "conduct triable by court-martial," the veteran received his discharge "under other than honorable conditions" (OTH). R. at 2.

In February 1989, the veteran applied for VA medical benefits, citing the following conditions: bilateral hearing loss, eye condition, a nervous condition, migraine headaches, chest pains, asthma, and a fractured ankle. R. at 70–73. Because of the nature of his discharge, the VA issued an Administrative Decision, dated June 19, 1989, stating:

> [38] C.F.R. [§] 3.12(d)(4) states that a discharge will be considered to have been issued under other than honorable conditions if a claimant is discharged because of *willful and persistent misconduct.* The claimants [sic] period of AWOL *during his relatively short period of active duty* is considered to be *willful and persistent misconduct.*

R. at 81 (emphasis added). The Administrative Decision concluded that the veteran's "discharge on September 9, 1981, is considered to be a bar to VA benefits. He is entitled to health care under Chapter 17." *Id.* The veteran filed a Notice of Disagreement, stating that he was attempting to have his discharge status upgraded and that he wished to explain the circumstances surrounding his OTH discharge. R. at 82. The VA issued a Statement of the Case on July 17, 1989. R. at 85–88. A VA hearing was held on August 21, 1989, where the veteran testified that, during his tour at Fort Benning, he was given medication for chest pains, medication which caused him to become severely disoriented. He testified that the medication "made me almost sort of like a zombie. I was walking around in a daze." R. at 89–90. The veteran testified that he went AWOL without realizing it, and he emphasized that he returned voluntarily. R. at 91–92, 96. He also testified that he did not understand the ramifications of his OTH discharge at the time he accepted it. R. at 96. Nonetheless, the hearing officer confirmed the finding of willful and persistent misconduct. R. at 99. The veteran's accredited representative, the Veterans of Foreign Wars (VFW), filed a VA Form 1–646 (Statement of Accredited Representative in Appealed Case) and prepared an "Informal Hearing Presentation." R at 103–06. The VFW contended that the veteran "was not mentally responsible for his actions." R. at 104. In the presentation, the VFW representative argued that 38 C.F.R. § 3.12(c)(6) requires that, for a discharge based on a period of AWOL to constitute a bar to receipt of VA benefits, that period of AWOL must be more than 180 days. R. at 105–06.

The BVA issued a decision on September 6, 1990, denying the veteran eligibility for VA benefits. The BVA determined that the veteran's testimony was "not credible or supported by his service records" and concluded that "the veteran's conduct was indeed willful misconduct, and considering that AWOL was for over 30 days we also find that it was persistent." R. at 110. Since the BVA did not address the section

3.12(c)(6) argument, the VFW, in October 1990, moved for reconsideration, arguing that the BVA decision was clearly erroneous because it violated section 3.12(c)(6). R. at 112–13. The VFW also argued that the veteran's one-time AWOL did not constitute "persistent" conduct. R. at 114–16. The BVA granted the motion for reconsideration, and an expanded panel issued a decision on July 8, 1991, which addressed both arguments. First, the BVA concluded that 38 C.F.R. § 3.12(c)(6) was promulgated in order to include the statutory bar to benefits under 38 U.S.C. § 5303(a) (formerly § 3103(a)) for veterans who, as part of a "special discharge review program," had received upgrades of their OTH discharges. The regulation was designed, they said, to make it clear that those veterans would be barred from receiving benefits, despite their discharge upgrades under the program, if their original OTH discharge was for being AWOL more than 180 days. The BVA therefore determined that 38 C.F.R. § 3.12(c)(6) was not applicable in this case. *Kenneth R. Winter*, BVA 90–30791, at 5–6 (July 8, 1991). The BVA also noted that the Uniform Code of Military Justice (UCMJ) treated AWOL of more than 30 days as a more severe offense than AWOL of less than 30 days. The BVA, therefore, determined that the veteran's AWOL of 32 days was a severe and, by analogy, a persistent offense. *Id.* at 6–7. Consequently, the BVA concluded that the veteran's AWOL of more than 30 days "constituted willful and persistent misconduct," and it "resulted in his discharge under conditions other than honorable." *Id.* at 7. The veteran perfected a timely appeal of that decision to this Court. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

## II. ANALYSIS

█ The veteran contends that 38 C.F.R. § 3.12(c)(6) is the determining regulation. That regulation states that benefits are to be denied "by reason of a discharge under other than honorable conditions as a result of an absence without leave ... for a continuous period of at least 180 days." However, the regulation goes on to state that "[t]his bar applies to any person awarded an honorable or general discharge prior to October 8, 1977, under one of the programs listed in paragraph (h) of this section." Paragraph (h) lists the following programs: (1) the President's directive of January 19, 1977, initiating further action with respect to Presidential Proclamation 4313 of September 16, 1974; (2) the Department of Defense's special discharge review program effective April 5, 1977; and (3) any discharge review program implemented after April 5, 1977, and not made applicable to all persons administratively discharged or released from active military, naval, or air service under other than honorable conditions. As noted by the BVA in the well-reasoned and well-written opinion by the expanded panel, this regulation was promulgated pursuant to 38 U.S.C. § 5303(e)(2)(A) (formerly § 3103(e)(2)(A)). A review of the legislative history of the statute, whose language is mirrored in this regulation, indicates that section 5303(e)(2)(A) was enacted in 1977 in response to President Carter's clemency and discharge review and upgrade programs for Vietnam-era draft evaders and deserters. Those discharge review and upgrade programs are the programs listed in paragraph (h) of the regulation. The statute and regulation were also drafted to include additional considerations which might permit the awarding of VA benefits. They were specifically designed to prevent, under any circumstances, the award of benefits to Vietnam era veterans who had *deserted* (as indicated by an AWOL status of 180 days or more) and, therefore, had received OTH discharges or worse, but who subsequently had their original discharges upgraded under the amnesty programs. *See* H.R.Rep. No. 580, 95th Cong., 1st Sess. (1977), *reprinted in* 1977 U.S.C.C.A.N. 2844. In sum, the statute and regulation result in an increase in the requirements for receipt of benefits by persons with upgraded discharges, pursuant to the findings of one of the listed programs. They in no way modify the requirements for awarding of benefits found elsewhere in statutes or regulations. They pertain solely to Viet-

**32**

nam-era veterans who received OTH discharges stemming from extended periods of AWOL. *Id.* at 17–18, *reprinted in* 1977 U.S.C.C.A.N. at 2860–61; *see also* 38 C.F.R. § 3.13(c)(6). They are irrelevant to this veteran, as the BVA noted in its decision.

■ Because section 3.12(c)(6) is not applicable here, we now turn to the other relevant subsections. Section 3.12(a) states that "pension, compensation, or dependency and indemnity compensation is not payable unless the period of service on which the claim is based was terminated by discharge or release under conditions other than dishonorable. (38 U.S.C. [§] 101(2))." Section 3.12(b) states that "a discharge or release from service under one of the conditions specified in this section is a bar to the payment of benefits unless it is found that the person was insane at the time of committing the offense...." Section 3.12(d) states that "[a] discharge or release because of one of the offenses specified in this paragraph is considered to have been issued under dishonorable conditions." Subparagraph (4) of section 3.12(d) spells out the criteria of one of those offenses:

Willful and persistent misconduct. This includes a discharge under other than honorable conditions, if it is determined that it was a persistent misconduct. A discharge because of a minor offense will not, however, be considered willful and persistent misconduct if service was otherwise honest, faithful, and meritorious.

Given the plain language of the regulation, it is obvious that any OTH discharge will bar the receipt of benefits by the veteran if it is determined that the OTH discharge was based upon willful and persistent misconduct. In this case, the veteran was on active duty for slightly less than 180 days. Consequently, the veteran spent more than 18% of his time in service in an AWOL status. The BVA correctly determined that the UCMJ views AWOL in excess of 30 days as a severe offense, punishable by confinement for up to one year and the issuance of either a bad conduct or dishonorable discharge. *See* MANUAL FOR COURTS-MARTIAL (1984), PART IV, PARA. 10(e)(2)(b) AND (c). Consequently, the BVA's determi-

nation that this veteran's misconduct was severe and, by analogy, persistent because he spent almost one fifth of his service time in an AWOL status is fully supported by the record. The VA was also precluded by section 3.12(d) from considering the veteran's prior service, regardless of the nature of that service because the veteran's conduct was serious. *See* 38 C.F.R. § 3.12(d)(4).

Finally, the record contains no indication that the veteran had any mental illness at the time of his AWOL. His mental evaluation during the Chapter 10 proceedings shows him to be normal. Further, his service medical records do not indicate that he was receiving any medication for his chest pains at the time of the AWOL incident. Section 3.12(b), therefore, is also inapplicable in this case.

Upon consideration of the foregoing and the record on appeal, the Court holds that the veteran has not demonstrated that the BVA committed either factual or legal error which would warrant reversal. *See Gilbert v. Derwinski,* 1 Vet.App. 49 (1990); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed. Cir.1990).

## III. CONCLUSION

For the reasons stated above, the BVA decision of July 8, 1991, is AFFIRMED.